# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 17-20543-JAD |
| | ) | |
| DAVID H. ZIMMER, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | X | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Movant, | ) | Related to Doc. No. 383 |
| | ) | |
| vs. | ) | |
| | ) | |
| DANIEL PETER MORRIS and | ) | |
| LUCILLE AIOSA MORRIS, | ) | |
| | ) | |
| Respondents. | ) | |
| | X | |

### MEMORANDUM ORDER GRANTING MOTION TO QUASH

The matter before the Court is the United States of America's Motion to Quash the trial subpoena served by Daniel Peter Morris and Lucille Aiosa Morris (the "Morris Creditors") upon the Commissioner of the Internal Revenue Service (the "IRS") or His Designee.

The subpoena at issue concerns the upcoming trial on the Morris Creditors' objection to the proof of claim filed by the IRS at Claims Register No. 13-1. The claim of the IRS, in the amount of $12,064.18, is based upon David H. Zimmer's self reported tax liability as reflected on his 2016 federal tax return.

The genesis of the Morris Creditors' objection to claim is that Mr. Zimmer resided in Canada during the time period that is germane to the instant litigation. Given the fact that Mr. Zimmer resided in Canada, the Morris Creditors argue that Mr. Zimmer was entitled to a foreign tax credit with respect to his 2016 federal taxes, even though Mr.

Zimmer did not file a Canadian tax return and did not claim such a credit in both his U.S. tax returns and accompanying schedules.

The Morris Creditors further argue that, according to a calculation done by them using commercially available tax preparation software, the amount of the alleged foreign tax credit <u>not claimed</u> by Mr. Zimmer exceeds Mr. Zimmer's tax debt to the United States. According to the Morris Creditors, had Mr. Zimmer both accrued and/or paid[1] his Canadian taxes and then claimed the credit on his U.S. tax return, the IRS claim would actually be valued at zero dollars.

Given these theories, the Morris Creditors have propounded a subpoena to compel the Commissioner of the IRS (Mr. Charles Rettig) or his designee to testify at trial. At the September 1, 2020 hearing[2] on the Motion to Quash, it was admitted that the gravamen of the testimony sought by the Morris Creditors is that they would like the Commissioner or his designee to testify regarding the practice of the IRS in accepting tax returns prepared by taxpayers utilizing commercially available tax preparation software.

At the hearing on the Motion to Quash, it was also admitted by the Morris

---

[1] Pertinent statutes or rules relating to the claiming of foreign tax credits can be found at 26 U.S.C. § 905 and Treas. Reg. 1-905-2. Neither the Morris Creditors nor the United States clearly spell out the mechanics of this statute and associated regulations. A fair reading of the statute and regulations is that a taxpayer can elect to claim a foreign tax credit on either an accrual or cash basis method of accounting. Once the taxpayer takes the credit under one of these methods of accounting, the method of accounting actually chosen remains the method for taking the credits going forward and the taxpayer cannot vacillate from one method of accounting to another. Regardless of the method of accounting used to claim the foreign tax credit, payment of the foreign tax is not to be ignored. For example, even when the credit is taken by way of accrual of the foreign taxes, the statute and rules have certain "redetermination" provisions which are dependent upon when payment of the foreign taxes is made by the taxpayer. Ultimately, at the trial of this matter, the parties will have to demonstrate to the Court the relevance of the statute and its related rules because the undisputed facts are that Mr. Zimmer never actually claimed any foreign tax credits.

[2] At the conclusion of the September 1, 2020 hearing, the Court orally ruled that it had granted the Motion to Quash. This Memorandum Order memorializes the Court's order.

Creditors that the ability of Mr. Zimmer or the bankruptcy estate to avail themselves of the foreign tax credit is conditioned upon Mr. Zimmer actually paying Canadian taxes.[3] It was further admitted that neither the Morris Creditors nor the IRS have any evidence that Mr. Zimmer paid any Canadian taxes during the relevant period of time despite the fact that, if due, the Canadian taxes should have been paid more than 2 years ago. Accordingly, the Morris Creditors admitted that their objection to the claim of the IRS is largely an exercise of conjecture or speculation as to whether Mr. Zimmer will file a Canadian tax return sometime in the future, whether Mr. Zimmer will pay the past due Canadian taxes sometime in the future, and whether Mr. Zimmer will seek a future tax refund from the IRS on account of the presently unclaimed foreign tax credit with respect to past Canadian taxes possibly paid by Mr. Zimmer in the future.

Federal Rule of Civil Procedure 45(c)(1), which is incorporated into bankruptcy matters by operation of Federal Rule of Bankruptcy Procedure 9016, requires that the person issuing a subpoena "avoid imposing undue burden or expense." According to the Rules of Civil Procedure, a subpoena that imposes an undue burden may be quashed by the court for that reason alone. See Fed. R. Civ. P. 45(d)(3)(A)(iv).

Courts have held that a subpoena may be quashed if it calls for clearly irrelevant evidence. See, e.g., Anderson v. British Overseas Airways Corp., 149 F. Supp. 68, 70 (S.D.N.Y. 1956) (stating that a subpoena will be quashed if it is burdensome in detail and under circumstances where no further evidence could affect a conclusion made by the court); see also Commercial Metals Co. v. Int'l Union Marine Corp., 318 F. Supp. 1334, 1335 (S.D.N.Y. 1970) (denying motion to quash subpoena in contract dispute between

---

[3] Because if foreign taxes were accrued, but not paid by Mr. Zimmer, any foreign tax credit claimed in the United States could be "redetermined" based upon non-payment of the underlying foreign tax. See footnote 1 above.

shipowner and charterer because records showing profits earned by shipowner from alleged wrongful use of the ship during the charter period were relevant to the arbitrator's inquiry), Jimenez v. City of Chicago, 733 F. Supp. 2d 1268, 1273 (W.D. Wash. 2010)("the compulsion of production of irrelevant information is an inherently undue burden") and Unsworth v. Musk, Case No. 19-mc-80224-JSC, 2019 WL 5550060, at *6 (N.D. Cal., Oct. 28, 2019) (finding a subpoena irrelevant and quashing it as unduly burdensome when a defendant attempted to subpoena a Buzzfeed reporter to ask questions about Buzzfeed's off the record interview policies because only the defendant's state of mind – not the reporter's – concerning those policies was at issue).

Sub judice, the testimony sought by the Morris Creditors from the Commissioner of the IRS or his designee is wholly irrelevant with respect to the Morris Creditors' objection to the IRS claim. The Court reaches this conclusion because the IRS has not contested the Morris Creditors' assertions that Mr. Zimmer may have accrued a Canadian tax liability in some unknown amount, that such unknown Canadian tax liability remains unpaid, and that a potential payment by Mr. Zimmer on account of the unknown Canadian tax liability might give rise to a foreign tax credit in the U.S. sometime in the future.

The conclusion that testimony of the Commissioner or his designee is irrelevant is additionally supported by the following:

One, no party has disputed that the IRS tax assessment giving rise to the IRS claim is based upon Mr. Zimmer's self-reported tax liability as set forth in his 2016 U.S. tax return and is presumed to be correct as a matter of law. See United States v. Loreno, No. 1:10-CV-183-SJM, 2013 WL 2668213, at *2 (W.D. Pa. June 12, 2015), United States v. Kavanaugh, No. 02:07-CV-0432, 2009 WL 1177088 at *5 (W.D. Pa. April 29, 2009), and

United States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002).

Two, no party has disputed that a taxpayer is not entitled to a foreign tax credit unless it is claimed on a tax return and associated forms or schedules.  As the United States Tax Court has held: "[P]ermitting a credit for foreign income taxes paid or accrued is an act of grace on the part of Congress, and a taxpayer seeking to benefit from such a credit must prove that all the conditions upon which its allowance depends have been fulfilled." Wilcox v. C.I.R., 96 T.C.M. 193 (T.C. 2008); see generally INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  With respect to those conditions, a tax credit simply does not exist for present purposes unless the taxpayer is eligible for the credit and the taxpayer properly claims it. Cf. Mourad v. Commissioner, 121 T.C. 1, 7 (2013)(taxpayer who failed to claim or comply with statutory requirements for claiming low-income housing credits not eligible for such credits), aff'd 387 F.3d 27 (1st Cir. 2004). However, in the instant case Mr. Zimmer never claimed a foreign tax credit in his 2016 U.S. tax returns or related documents. See Treas. Reg. 1-905-2(a)(1)(requiring that any claim for a foreign tax credit in a tax return must be accompanied with a completed "Form 1116").

Three, all parties agree that there is no evidence that Mr. Zimmer has actually filed a 2016 Canadian tax return, paid any 2016 Canadian income taxes, or furnished proof of the same to the IRS, which is a prerequisite for Mr. Zimmer claiming the foreign tax credit. See Treas. Reg. 1.905-2(a)(2) and (b)(2)(setting forth what records must be presented to substantiate a foreign tax credit).

Considering all of these circumstances, and the admissions of record, it is clear that the requested testimony of the Commissioner or his designee is irrelevant, and the burden of complying with the subpoena exceeds any possible benefit of the testimony

sought. Stated in other words, the Morris Creditors have no real substantial need for irrelevant testimony and compelling compliance with the subpoena creates a burden that is both unnecessary and undue to the Commissioner or his designee.

To combat the above conclusion, the Morris Creditors suggest that the testimony of the Commissioner (or his designee) is necessary to validate a "2016 Hypothetical Tax Return" and a "2016 Hypothetical Foreign Tax Credit Form 1116," which were prepared by the Morris Creditors using commercially available tax preparation software. An examination of the documents reveals that these hypothetical forms were prepared by the Morris Creditors for use at trial. They were neither prepared by the taxpayer (Mr. Zimmer) nor were they actually filed by the taxpayer with the appropriate governmental entity.

As such, the documents are nothing but mere opinions of the Morris Creditors with respect to the amount of Mr. Zimmer's Canadian tax liability and his purported unclaimed foreign tax credit. Such opinions of the Morris Creditors are subject to the rules of evidence relating to the admissibility or non-admissibility of opinion testimony, and no party has produced any authority reflecting that the IRS's general practice in accepting tax returns prepared by taxpayers using commercially available software has any bearing on whether the hypothetical documents prepared by the Morris Creditors are admissible.

Accordingly, any testimony by the Commissioner or his designee as to whether the hypothetical forms (if ultimately prepared by the taxpayer and duly filed) would be accepted by the IRS is irrelevant to the issue of whether the opinion testimony of the Morris Creditors is admissible at trial pursuant to the Federal Rules of Evidence. Under these circumstances, the IRS has appropriately demonstrated that compliance with the

subpoena presents an undue burden and that the Motion to Quash has merit.[4]

Notwithstanding this conclusion, the Court reserves judgment as to the admissibility of the hypothetical forms referenced above, if and to the extent such documents are used and/or offered into evidence by the Morris Creditors at trial. For purpose of completeness, the Court also reserves judgment as to whether the Morris Creditors have the appropriate standing to challenge the IRS tax assessment, whether through use of the hypothetical forms or otherwise. The Court reserves such judgment because some courts have held that "it is a well established principle of law that third parties lack standing to challenge another's tax liability." In re Kowalczyk, 600 B.R. 806, 814 (Bankr. N.N.D. 2019)(collecting cases). Conversely, courts have also held that general unsecured creditors have standing to object to claims filed by other creditors, particularly in instances where the bankruptcy estate lacks sufficient funds to pay all unsecured creditors in full. See, e.g., Whiteley v. Slobodian (In re Mechanicsburg Fitness, Inc.), 592 B.R. 798 (Bankr. M.D. Pa. 2013).

For all of the reasons set forth herein, the Motion to Quash is granted, with each party bearing their own respective fees, costs and expenses.

Dated: September 8, 2020

_____
The Honorable Jeffery A. Deller
United States Bankruptcy Judge

cc:   Daniel Peter Morris, Esquire
      Mrs. Lucille Aiosa Morris
      Ward W. Benson, Esquire

FILED
9/8/20 11:49 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

---

[4] In the Motion to Quash, the IRS asserted various technical objections to the subpoena. Such objections relate to the legal capacity of Mr. Morris to sign the subpoena and appropriate service of the same. Inasmuch as the IRS did not advance these theories at the hearing on the Motion to Quash, the Court concludes that these arguments have been waived.