FILED
12/4/20 8:24 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy No. 17-20543-JAD |
| | ) | |
| DAVID H. ZIMMER, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| _____ X | ) | |
| | ) | |
| DANIEL PETER MORRIS and | ) | |
| LUCILLE AIOSA MORRIS, | ) | |
| | ) | |
| Movants, | ) | Related to Doc. No. 241 |
| | ) | |
| vs. | ) | |
| | ) | |
| DAVID H. ZIMMER, | ) | |
| DEPARTMENT OF TREASURY | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| and ROSEMARY C. CRAWFORD, | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ X | ) | |

## MEMORANDUM OPINION

The matter before the Court is a core proceeding, pursuant to which the Court has the requisite subject-matter jurisdiction to enter a final judgment. See 28 U.S.C. §§ 157(b)(2)(B) and 1334(b).  This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## I.

On July 19, 2019, Mr. Daniel Peter Morris and Mrs. Lucille Aoisa Morris (collectively, the "Morris Creditors") filed a pleading captioned as the "MOTION OF

CREDITORS DANIEL PETER MORRIS AND LUCILLE AIOSA MORRIS OBJECTING UNDER 11 U.S.C. § 502 TO CLAIM 13 OF DEPARTMENT OF TREASURY INTERNAL REVENUE SERVICE AND TO DISALLOW AND EXPUNGE CLAIM 13 FROM THE CLAIMS REGISTRY OF CASE NO. 17-20543 JAD."

The gist of the pleading is that the Morris Creditors object to the proof of claim filed by the United States Internal Revenue Service (the "IRS") at Claims Register No. 13-1. The claim of the IRS, in the amount of $12,064.18, is based upon David H. Zimmer's self reported tax liability as reflected on his 2016 federal tax return.

On September 9, 2020, the Court conducted a trial on the Morris Creditors' objection to the IRS claim.  The genesis of the Morris Creditors' objection to the claim is that Mr. Zimmer allegedly resided in Canada during part of the time period that is germane to the instant litigation.  Given the fact that Mr. Zimmer partly resided in Canada, the Morris Creditors argue that Mr. Zimmer was entitled to a foreign tax credit with respect to his 2016 federal taxes, even though Mr. Zimmer did not file a Canadian tax return and did not claim such a credit in his U.S. tax return and accompanying schedules.

At the trial of this matter, the 2016 tax return filed by Mr. Zimmer with the IRS was authenticated and accepted into evidence.  The United States also offered into evidence a Form 4340 Certificate of Assessment for David Zimmer's 2016 income tax return– which is the tax year at issue in this litigation.  The Morris

Creditors stipulated to the admission of the Certificate of Assessment (ECF No. 393), and the Court admitted it into evidence. <u>See</u> Transcript of September 9, 2020 ("<u>Trial Transcript</u>"), ECF No. 418 at p. 5, line 11, through p. 6, line 4.  That exhibit established the United States' *prima facie* case. <u>United States v. Fior D'Italia, Inc.</u>, <u>supra</u>.

Mr. Zimmer also testified at trial.  In this regard, Mr. Zimmer testified that he paid no Canadian taxes during the relevant period of time because the income he earned during the relevant period of time was earned outside of Canada.  He also testified that he filed no Canadian tax returns because he earned no income in Canada, because Canada denied his ability to have a taxpayer identification number, and because the Canadian authorities would not extend Mr. Zimmer's stay in the country.  Accordingly, no admissible evidence was presented by any party at trial reflecting that any foreign credit is due to Mr. Zimmer or the bankruptcy estate on account of the 2016 tax year. This means that no admissible evidence was presented at trial which would cause the elimination of the IRS tax claim based on Mr. Zimmer's 2016 federal tax return.

Further, no party has disputed that the IRS tax assessment giving rise to the IRS claim is based upon Mr. Zimmer's self-reported tax liability as set forth in his 2016 U.S. tax return and is presumed to be correct as a matter of law. <u>See</u> <u>United States v. Loreno</u>, No. 1:10-CV-183-SJM, 2013 WL 2668213, at *2 (W.D. Pa. June 12, 2015), <u>United States v. Kavanaugh</u>, No. 02:07-CV-0432, 2009 WL

1177088 at *5 (W.D. Pa. Apr. 29, 2009), and United States v. Fior D'Italia, Inc., 536 U.S. 238, 242 (2002).

No party has also disputed that a taxpayer is not entitled to a foreign tax credit unless it is claimed on a U.S. tax return and associated forms or schedules. As the United States Tax Court has held: "[P]ermitting a credit for foreign income taxes paid or accrued is an act of grace on the part of Congress, and a taxpayer seeking to benefit from such a credit must prove that all the conditions upon which its allowance depends have been fulfilled." Wilcox v. C.I.R., 96 T.C.M. 193 (T.C. 2008); see generally INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

With respect to those conditions, a tax credit simply does not exist for present purposes unless the taxpayer is eligible for the credit and the taxpayer properly claims it. Cf. Mourad v. Commissioner, 121 T.C. 1, 7 (2013)(taxpayer who failed to claim or comply with statutory requirements for claiming low-income housing credits not eligible for such credits), aff'd 387 F.3d 27 (1st Cir. 2004). However, in the instant case, the evidence reflects that Mr. Zimmer never claimed a foreign tax credit in his 2016 U.S. tax return or related documents. See Treas. Reg. 1-905-2(a)(1)(requiring that any claim for a foreign tax credit in a tax return must be accompanied with a completed "Form 1116").

Accordingly, since there is no evidence that Mr. Zimmer actually accrued any 2016 Canadian tax liability, filed a 2016 Canadian tax return, paid any 2016 Canadian income taxes, or furnished proof of the same to the IRS, which is a

prerequisite for Mr. Zimmer claiming the foreign tax credit, <u>see</u> Treas. Reg. 1.905-2(a)(2) and (b)(2)(setting forth what records must be presented to substantiate a foreign tax credit), the weight of the evidence supports allowance of the IRS claim filed at Claim Register No. 13-1.

## II.

In rendering its decision today, the Court has duly considered all of the arguments presented by the Morris Creditors.   For example, the Court has considered the Morris Creditors' contention that the IRS claim should be disallowed because the IRS did not attach IRS Form 4340 to its proof of claim. Here, the Morris Creditors rest their objection upon Fed.R.Bankr.P. 3001(c)(1), which dictates that a claim "based upon a writing" shall have "the writing" filed "with the proof of claim."  This documentary objection interposed by the Morris Creditors is without merit because:

> The majority of courts to consider this issue in the context of claims by the IRS have concluded that because tax claims are based on statutory obligations rather than obligations created by a writing, Fed.R.Bankr.P. 3001(c) does not apply to proofs of claims filed by taxing authorities. <u>See</u> <u>U.S. v. Braunstein (In re Pan)</u>, 209 B.R. 152, 156 (D.Mass.1997) (citing [<u>Spiers v. Ohio Dep't of Natural Resources (In re Jenny Lynn Mining Co.)</u>, 780 F.2d 585 (6th Cir.1986)], district court held that because proof of claim was based on a statutory tax penalty, the government had no obligation under the rules to provide additional documentation in support of its proof of claim); <u>Vines v. I.R.S. (In re Vines)</u>, 200 B.R. 940, 949 (M.D.Fla.1996) (IRS was not required to attach any documentation to its proof of claim because the claim and lien were based on federal

statutes, not a writing, citing <u>Jenny Lynn Mining Co.</u>), <u>In re Alvstad</u>, 223 B.R. 733, 745 (Bankr.D.N.D.1998) ("[C]laim [of IRS] does not fall within the compass of the documentation requirement of Rule 3001(c), as its basis lies in statute."); <u>Bozich v. I.R.S. (In re Bozich)</u>, 212 B.R. 354, 360 (Bankr.D.Ariz.1997) ("Courts across the country have held that tax claims are based on statute, not on a writing, and that, therefore, such claims do not need to be supported by the documentation required by Rule 3001(c)."); <u>In re Shabazz</u>, 206 B.R. 116, 124 (Bankr.E.D.Va.1996) (court rejected argument that IRS was required to attach a certificate of assessment to proof of claim, noting that Rule 3001(c) only applies where claim is based on a writing); <u>Fuller v. U.S. (In re Fuller)</u>, 204 B.R. 894, 898 (Bankr.W.D.Pa.1997) (court observed that although in the case before it the IRS had provided detailed supporting documentation, other courts had concluded that such documentation was unnecessary); <u>In re Catron</u>, 198 B.R. 905, 907 (Bankr.M.D.N.C.1996) (court concluded that IRS's proof of claim complied with Rule 3001 because IRS claim was based on statute rather than writing, no security interest arising out of an agreement was claimed, and IRS had attached to its proof of claim an itemization of the amounts and types of taxes due); <u>In re Hollars</u>, 198 B.R. 270, 272 (Bankr.S.D.Ohio 1996) (The supporting documentation requirement of Rule 3001(c) is not applicable because "the claim of the IRS is not founded upon a writing, but rather is based upon the United States Constitution and federal legislation which grants the federal government the power to lay and collect taxes on income."); <u>In re White</u>, 168 B.R. 825, 834 (Bankr.D.Conn.1994) (even though statutory lien asserted, it was not necessary for IRS to attach relevant sections of the Internal Revenue Code or any other documentation to its proof of claim, <u>citing</u> <u>Jenny Lynn Mining Co.</u>).

<u>In re Shaver</u>, 247 B.R. 436, 438-39 (Bankr. E.D. Tenn. 1999).

## III.

Included among the Morris Creditors' arguments is extensive argument regarding the burden of production and burden of persuasion with respect to objections to federal tax claims in bankruptcy.

One case, cited by the Morris Creditors with approval, describes the shifting burdens as follows:

> A proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and amount of the claim. Fed. R. Bankr.P. 3001(f); see also Juniper Dev. Group v. Kahn (In re Hemingway Transp., Inc.), 993 F.2d 915, 925 (1st Cir.1993). In order to rebut this prima facie evidence, the objecting party must produce "substantial evidence." United States v. Clifford (In re Clifford), 255 B.R. 258, 262 (D.Mass.2000), citing Hemingway Transport, 993 F.2d at 925. If the objecting party produces substantial evidence and thereby rebuts the prima facie evidence, the burden is restored to the party on whom it would lie outside of bankruptcy. "[T]he burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it." Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15, 20, 120 S.Ct. 1951, 1955 (2000). "[T]he [Bankruptcy] Code makes no provision for altering the burden on a tax claim, and its silence says that no change was intended." Id ., 530 U.S. at 21, 120 S.Ct. at 1956.
>
> Outside of bankruptcy, where a taxpayer challenges a determination of tax deficiency, "a deficiency notice carries a presumption of correctness requiring the taxpayer to prove by a preponderance of the evidence that the Commissioner's determination was erroneous." Andrew Crispo Gallery, 16 F.3d 1336, 1341 (2d Cir.1994)), citing Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 9, 78 L.Ed. 212 (1933). Likewise, the

> burden of clearly showing the right to a claimed deduction rests in the first instance on the taxpayer. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84, 112 S.Ct. 1039, 117 L.Ed.2d 226 (1992); IRS v. Official Committee of Unsecured Creditors (In re Industrial Commercial Electrical, Inc.), 319 B.R. 35, 55 (D.Mass.2005). However, under § 7491(a) of the Internal Revenue Code, "if, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed . . ., the Secretary shall have the burden of proof with respect to such issue." 26 U.S.C. § 7491(a). . . . '[C]redible evidence,' for purposes of interpreting and applying § 7491(a)(1), is 'the quality of evidence which, after critical analysis, the court would find sufficient upon which to base a decision on the issue if no contrary evidence were submitted (without regard to the judicial presumption of IRS correctness)." Griffin v. C.I.R., 315 F.3d 1017, 1027 (8th Cir.2003); Okerlund v. United States, 53 Fed. Cl. 341, 356 n. 23 (Fed.Cl.2002); In re Industrial Commercial Electrical, Inc., 319 B.R. at 54–55.

See In re Shaw, No. 09-18648-FJB, 2013 WL 625110, at *4-5 (Bankr. D. Mass. Feb. 20, 2013).

Application of these standards leads to the inescapable conclusion that the objection of the Morris Creditors is without merit. Specifically, the IRS presented evidence at trial which established the *prima facie* validity of its claim ( i.e., the 2016 tax return filed by Mr. Zimmer and the IRS Form 4340 Certificate of Assessment). By way of contrast, the Morris Creditors presented no admissible evidence, let alone substantial evidence, supporting the Morris Creditors' theory that Mr. Zimmer was entitled to some unknown and unclaimed foreign tax credit with respect to his 2016 federal income taxes.

-8-

Recognizing the deficiency in their evidentiary record, the Morris Creditors'

post-trial submissions expend much effort rehashing their failed attempt to offer

a hypothetical Canadian tax return (which was prepared by Mr. Morris for

purpose of trial) into the record.    The Morris Creditors proclaim that this

document is "evidence" rebutting the IRS claim.    Inasmuch as this hypothetical

tax return is both hearsay and opinion testimony which was offered without the

requisite foundation for admissibility, the document was not admitted into

evidence by the Court at trial and is appropriately excluded from consideration.

United States v. Petrossi, CRIMINAL NO. 1:17-CR-192, 2018 WL 1141500 (M.D.

Pa. Mar. 2, 2018)(opinion testimony was precluded pursuant to Fed.R.Evid. 702

where proffered witness lacked requisite knowledge or qualification to provide

opinion testimony; out-of-court lay witness statements regarding a tax return

constituted inadmissible hearsay pursuant to Fed.R. Evid. 801 and 802); United

States v. Peters, No. 4:12–CV–01395–AGF, 2014 WL 6669757 at *2 and *5 (E.D.

Mo. Nov. 24, 2014)(unsigned tax return constituted inadmissible hearsay and

opinion testimony from an undisclosed non-qualified expert witness).

A canvass of the record made at trial reflects that no admissible evidence

was presented by any party reflecting that Mr. Zimmer had any accrued foreign

tax liability giving rise to a foreign tax credit with respect to his U.S. taxes.

Rather, the admissible evidence reflects that Mr. Zimmer resided in Canada for

only part of year 2016, that Mr. Zimmer earned no income in Canada in 2016 and

did not accrue Canadian income taxes in year 2016, and that Mr. Zimmer filed

neither Canadian tax returns nor paid Canadian income taxes at anytime germane

to this matter.   This record therefore supports the conclusion that the Morris

Creditors' objection is without merit.

For example, at trial Mr. Zimmer testified:

> I lived in Canada in 2016, yeah . . . But I earned no
> money there, nor did I live there for more than half a
> year; it was less than half of the year.  I was more so in
> Mexico and the United States in 2016 . . .

See Trial Transcript at p. 33, lines 20-23; see also Trial Transcript at p.37, lines

11-13; page 51, lines 1-7; p. 68, lines 14-16.

In response to questioning by Mr. Morris, Mr. Zimmer also testified as

follows:

> Q.    Do you know that as a resident of Canada that
>       you may have accrued Canadian tax for 2016 - -
>
> A.    Nope.
>
> Q.    - - requiring that you file a Canadian income tax return?
>
> A.    I wasn't a resident of Canada.  I was a visitor in Canada.  I
>       could never obtain a work permit because of the criminal
>       charge against me.
>       . . .
> A.    . . . in 2018 and they finally said to me, "Mr. Zimmer, you have
>       to leave the country."  So no, I couldn't work there.

See Trial Transcript at p. 44, lines 9-19.

Mr. Zimmer elaborated further when he testified regarding his work for

various "Aaron Morgan" entities:

> ... One, I didn't work in 2016. [Aaron Morgan Imports] didn't really start until 2017, after the bankruptcy was filed. . . . I didn't make any money and I didn't live there more than six months of the year.  I lived in the United States for more than six months of the year.
>
> I did, however, in 2017, submit a form for a taxpayer identification number [in Canada], which required me to get a work permit or to be a permanent resident.  And when they did the investigation, they found out that I had a criminal record. And basically the year after, they said, "We've done everything we can. Please leave the country." But I did not get the tax payer identification number, nor did I get the ability to stay there.

See Trial Transcript at p. 57, lines 18-25; p. 58, lines 1-7.

With respect to filing income tax returns in Canada, Mr. Zimmer testified

as follows:

> Q.    ... have you filed a Canadian tax return for 2016?
>
> A.    No.
>
> Q.    Has the Canada Revenue Agency contacted you about owing tax - - Canada tax for 2016?
>
> A.    No.

See Trial Transcript at p. 58, lines 23-25; 59, lines 1-3.

With respect to paying Canadian taxes, Mr. Zimmer testified as follows:

> Q.    I apologize if this was asked, Mr. Zimmer, but did you make any payments to the Canadian taxing authorities on account of the 2016 income tax year?
>
> A.    I never made any payments to the Canadian tax authorities on anything, ever.

<u>See</u> Trial Transcript at p. 66, lines 10-14.

When asked about whether he engaged in any business or earned any income in Canada in 2016 with respect to his work for Aaron Morgan Imports, Ltd. and Aaron Morgan Group, Ltd., Mr. Zimmer testified unequivocally that he earned "[a]bsolutely nothing, ever" and "no." <u>See</u> Trial Transcript at p. 37, lines 23-25; p. 38, lines 1-4 and 11-14; <u>see also</u> Trial Transcript at p. 44, lines 6-8.

When pressed further as to whether he received "any consideration" for his activity with Aaron Morgan Imports, Mr. Zimmer testified again that he received "[a]bsolutely nothing" because "the product was being sold for less than what it cost." <u>See</u> Trial Transcript at p. 43, lines 14-17; <u>see also</u> Trial Transcript at pp. 6-8.

Accordingly, regardless of the fact that Mr. Zimmer never claimed a foreign tax credit on his 2016 U.S. tax return, no admissible evidence has been presented in this proceeding which demonstrates that Mr. Zimmer had any income in 2016 "derived from sources without the United States" as such phrase is used in 26 U.S.C. §§ 862 and 905.  As such, even if the Court were to ignore Mr. Zimmer's failure to claim the foreign tax credit in his 2016 U.S. tax return and related schedules, no evidence has been presented demonstrating that Mr. Zimmer is (or was) entitled to claim a foreign tax credit in the United States based on his alleged activities in Canada.

Faced with this evidentiary record, the Morris Creditors challenge Mr.

-12-

Zimmer's credibility citing, among other things, Mr. Zimmer's past criminal conduct.   They also attack Mr. Zimmer's credibility based upon the false statement(s) he made in his bankruptcy petition regarding his home address and based upon other alleged inaccurate or incomplete statements or omissions (which have been disputed by Mr. Zimmer).   While the Court is troubled by some of Mr. Zimmer's past conduct, during the trial of this matter the Court observed Mr. Zimmer's demeanor closely and finds his present testimony to be credible.   Even if the Court did not believe Mr. Zimmer's trial testimony, the Morris Creditors have nonetheless introduced no admissible evidence reflecting that Mr. Zimmer had income in 2016 "derived from sources without the United States."   Absent the production of a s*cintilla* of evidence, and because the Morris Creditors' objection is based upon conjecture and guesswork, the Morris Creditors have not met their burden of production to overcome the *prima facie* validity of the IRS claim.

**IV.**

It is worth emphasizing that the court's opinion in <u>Shaw</u>, <u>supra</u>., noted that the *prima facie* validity of a duly filed claim can be rebutted when "substantial evidence" is produced by the objecting party.   The "substantial evidence" prong in <u>Shaw</u> is not the law within the Third Circuit.

In <u>Allegheny International, Inc.</u>, 954 F.2d 167, 173-74 (3d Cir. 1992), the Third Circuit Court of Appeals described the quantum of evidence that must be produced by an objector to overcome the *prima facie* validity of a claim.   There the

Third Circuit stated that the amount of evidence needed to rebut a duly filed claim is "evidence equal in force to the *prima facie* case." Id. The Third Circuit held that "[i]n practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." Id.

*Sub judice*, the Morris Creditors offered no admissible evidence refuting any of the allegations that are essential to the legal sufficiency of the IRS's claim. Accordingly, the Morris Creditors' objection is overruled pursuant to the standards set forth in Allegheny International, Inc.

## V.

For sake of completeness, the Court notes that the Morris Creditors argue that certain tolling provisions of 11 U.S.C. § 108 and 26 U.S.C. § 6511 somehow bar the IRS's claim.  This argument is apparently being raised by the Morris Creditors because a taxpayer is required to notify the Secretary of Treasury of accrued but unpaid foreign taxes "before the date 2 years after the close of the taxable year to which such taxes relate," 26 U.S.C. §905(c)(1)(B), and this time period has now passed.

Upon review of these statutes, the Court concludes that the Morris Creditors' reliance upon 11 U.S.C. § 108 and 26 U.S.C. § 6511 to resuscitate their objection to the IRS claim is misplaced.  The Court reaches this conclusion because there is no evidence of record that Mr. Zimmer accrued foreign taxes during the tax year in question.  Therefore, there is no evidence that Mr. Zimmer

is entitled to belatedly pursue a foreign tax credit against the United States.  As such, the provisions of 11 U.S.C. § 108 and 26 U.S.C. § 6511 have no present application to the case at bar.

## VI.

In rendering this decision, the Court considered the IRS's challenge to the Morris Creditors' standing to object to claims in this bankruptcy case.

The Morris Creditors contend that they are parties in interest because if the IRS claim is disallowed, it is undisputed that the Morris Creditors will receive a greater distribution at the conclusion of this chapter 7 liquidation.  The Court agrees with the Morris Creditors, and holds that the Morris Creditors have a sufficient stake in the outcome of this matter to have the requisite standing to object to the IRS claim.

Prior to the adoption of the Bankruptcy Code in 1978, the law of the Third Circuit was that "a general creditor of a bankrupt has no right to contest another creditor's claim or to appeal from the refusal of the court to disallow it unless upon application the trustee has refused to do so and the district court has authorized the creditor to proceed in the trustee's name." <u>Fred Reuping Leather Co. v. Fort Greene Nat. Bank of Brooklyn (In re Honesdale Union Stamp Shoe Co.)</u>, 102 F.2d 372, 372-73 (3d Cir. 1939).

Interestingly, this was the law of the Third Circuit even though section 57(d) of the Bankruptcy Act stated unequivocally: "Claims which have been duly proved

shall be allowed, upon receipt by or upon presentation to the court, unless objection to their allowance shall be made by *parties in interest*, or their consideration be continued for cause by the court upon its own motion." See 11 U.S.C. § 93(d)(repealed)(emphasis added).

The limitation on standing of general creditors to object to claims under the Bankruptcy Act appears to have been a prudential or gate-keeping limitation imposed by the courts. As the Third Circuit observed in Fred Rueping Leather:

> As is pointed out in the cases supporting the rule the trustee represents all the creditors and may therefore be relied upon to press all proper objections to the claims of those whose standing is questionable. If he defaults in his duty the court may upon application direct him in his duty or, if he be recalcitrant, remove him for disobedience, or permit a creditor to act in his name. To allow any creditor, without such leave, to institute proceedings to reject the claims of other creditors, will not . . . subserve any necessary purpose, and opens the door to grave abuse. It enables one creditor at his own pleasure to subject any one of the other creditors, of all the other creditors, to the inconvenience and expense of unnecessary litigation, and to unduly protract the settlement of the estate.

Fred Reuping Leather, 102 F.2d at 373 (quotations omitted)(quoting In re Lewensohn, 121 F. 538 (2d Cir. 1903)).

While the opinion in Fred Reuping Leather did not expressly say so, it can be surmised that a textual basis for courts limiting standing for prudential reasons was the power granted to bankruptcy courts to generally continue a claims objection "for cause by the court upon its own motion." See 11 U.S.C. §

93(d)(repealed).  This provision of the statute, however, was not carried over to the modern day Bankruptcy Code.  Notwithstanding this difference, section 502(a) of the modern day Bankruptcy Code does similarly state that a timely filed claim is "deemed allowed, unless a ***party in interest*** . . . objects." <u>See</u> 11 U.S.C. § 502(a)(emphasis added).

While the term "party in interest" is not defined anywhere in chapter 7 of the Bankruptcy Code, it is defined in the "right to be heard" provisions of chapter 11 which can be found at 11 U.S.C. § 1109.  This section of the Bankruptcy Code states, in pertinent part, that a "party in interest" includes "a creditor." <u>See</u> 11 U.S.C. § 1109(b).  Accordingly, if this definition of "party in interest" is read into 11 U.S.C. § 502(a), then the Morris Creditors have the capacity to object to the IRS's claim.

From a general standing perspective (whether it be Article III standing or statutory standing under the Bankruptcy Code), it has been held that "the relevant query" is whether the creditor "has a legally protectable interest that could be affected by this bankruptcy proceeding." <u>Whiteley v. Slobodian (In re Mechanicsburg Fitness, Inc.)</u>, 592 B.R. 798, 804 (Bankr. M.D. Pa. 2013)(citing <u>In re Global Indus. Techs., Inc.</u>, 645 F.3d 201, 210 (3d Cir. 2011)); <u>see also</u> <u>In re James Wilson Assocs</u>, 965 F.2d 160, 169 (7th Cir. 1992); and <u>In re Amatax Corp.</u>, 755 F.2d. 1034, 1042 (3d Cir. 1985).

In <u>Global Industrial Technologies, Inc.</u>, the Third Circuit Court of Appeals

held that the term "parties in interest" must be "construed broadly to permit parties affected by a chapter 11 proceeding to appear and be heard." In re Global Indus. Techs, Inc., 645 F.3d at 211 (quoting In re Amatax, 755 F.2d at 1042). It is worth noting that in that case the Third Circuit was confronted with the issue of standing in the context of plan objections under 11 U.S.C. § 1128(b), which states that a "party in interest may object to confirmation of a plan."

The language employed in section 1128(b) is remarkably similar to the claims objection language in section 502(a), which states that a claim is allowed "unless a party in interest . . . objects." As such, the Court sees no reason why the plain language of 11 U.S.C. § 502(a) should be construed any differently than other provisions of the Bankruptcy Code that afford standing to creditors as a "party in interest."[1] See In re Black, Davis and Shue Agency, Inc., 460 B.R. 407, 414 (Bankr. M.D. Pa. 2011).

---

[1] That creditors are included in the definition of a "party in interest" for purposes of objecting to a claim is supported by the plain language of section 502(a) because the statute states that a claim is "deemed allowed, unless a party in interest, *including a creditor of a general partner* in a partnership that is a debtor in a case under chapter 7 of this title, objects." 11 U.S.C. § 502(a)(emphasis added). Section 102(3) of the Bankruptcy Code contains various rules of construction for the statute, and states that the term "including" is "not limiting," see 11 U.S.C. § 1032(3) and therefore it is obvious that a general creditor is "included" in section 502(a)'s definition of "party in interest." Merely being a creditor, however, is not enough to confer Article III standing upon a litigant. Rather, the creditor must also demonstrate that an actual "case and controversy" exists, which includes demonstrating that the complained of injuries are capable of "redress" in the federal forum. See Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)(discussing the "case and controversy" requirement for federal subject-matter jurisdiction); Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000)(same), and Crawford v. Hertzberg (In re Hertzberg), Bankr. No. 13-23753-JAD; Adversary No. 14-2141-JAD (Bankr. W.D. Pa. November 13, 2014 (same). This is why only creditors who stand to receive a dividend (or increased dividend) as a result of the litigation have Article III standing to pursue an objection to a claim.

Accordingly, the answer to the question of whether the Morris Creditors have standing as a party in interest to object to the IRS claim is dependent upon whether the Morris Creditors have a protectable interest that is <u>affected by</u> the outcome of this proceeding.  The undeniable answer to this question is that the Morris Creditors do have a protectable interest in the outcome of this proceeding– that is, if they were to be successful, the dividend paid to them at the conclusion of the case will materially increase.  This Court concludes that these circumstances are sufficient to confer "party in interest" standing upon the Morris Creditors pursuant to 11 U.S.C. § 502(a).

The Court recognizes that it has not necessarily plowed new ground regarding the issue of creditor standing under 11 U.S.C. § 502(a).  In fact,  United States Bankruptcy Judge Henry W. Van Eck from the Middle District of Pennsylvania has written extensively on this issue in the case of <u>In re Mechanicsburg Fitness, Inc.</u>, <u>supra</u>.  In his opinion, Judge Van Eck wrote:

> . . . the Trustee contends that "absent his refusal to pursue possible objections to certain claims, he has the exclusive right to object to proofs of claim and leave to object should generally not be granted to a third party." Resp. Ans. at ¶ 2, Feb. 05, 2018, ECF No. 57. Because this court believes that the most natural reading of section 502(a) is that a creditor has an unrestricted right under section 502(a) to object to claims or interests in a chapter 7 case, the Trustee's burden to persuade the court otherwise is "exceptionally heavy". <u>See</u> <u>Patterson v. Shumate,</u> 504 U.S. 753, 760, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992).
>
> The Trustee does not rely upon the language of

502(a) to carry his burden. Instead, the Trustee relies upon "the way this section has been interpreted by the case law" to support his position. Tr. at 43, June 27, 2018, ECF No. 68. To this end, the Trustee cites two cases in support of his argument. <u>See</u> <u>In re Cremo</u>, 557 B.R. 343; <u>In re Ampal-American</u>, 545 B.R. 802. Review of these cases and the cases cited therein, however, exposes meaningful flaws in the reasoning upon which they rest, and upon which the Trustee relies. These decisions are therefore unpersuasive to this court.

The cases supporting the Trustee's position each follow a similar pattern. They begin by recognizing that section 502(a) unambiguously grants creditors standing to object to claims in chapter 7 cases. Next, and notwithstanding the clear mandate to end the judicial inquiry there, the cases continue their examination into the controversial realm of legislative intent and policy consideration. No explanation is offered to justify the departure from the unambiguous text of the statute. Thereafter, the decisions cite policy considerations described in a leading bankruptcy treatise and a 1983 Advisory Committee Note to Federal Rule of Bankruptcy Procedure 3007 ("Advisory Committee Note") as sources of support for the decision to limit a creditor's right to object to a claim pursuant to section 502(a). Some decisions supporting the Trustee's position also rely upon cases decided pursuant to pre-Code practice. <u>See</u> <u>In re Dominelli</u>, 820 F.2d 313, 317 (9th Cir. 1987) (citing <u>Fred Reuping Leather Co. v. Fort Greene Nat'l Bank</u>, 102 F.2d 372, 373 (3rd Cir. 1939) ); <u>Thompson</u>, 965 F.2d at 1147 (citing Dominelli, 820 F.2d at 317); <u>In re Morrison</u>, 69 B.R. 586, 589 (Bankr. E.D. Pa. 1987) (citing <u>Fred Reuping</u>, 102 F.2d at 373).

The approach described above fails to show the proper respect for the words of Congress. It ignores conventional doctrines of statutory construction and places undue emphasis on inappropriate sources such as Collier and the Advisory Committee Note. It cannot be contested that Collier "is not part of the Code's legislative history in any meaningful sense" and should not be

considered a tool of construction. See <u>Midlantic Nat.</u> <u>Bank v. New Jersey Dept. of Environmental Protection,</u> 474 U.S. 494, 512, 106 S.Ct. 755, 88 L.Ed.2d 859 (1986). Nor should courts accord any significance to advisory committee notes as they are not made by Members of Congress during hearings and are not included in official Senate and House Reports. See <u>Kelly</u> <u>v. Robinson,</u> 479 U.S. 36, fn. 13, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986). These sources should never be considered in the place of the plain, unambiguous text of the statute at issue.

Moreover, and in defiance of conventional doctrines of statutory construction, the decisions relied upon by the Trustee do not identify any ambiguous language in section 502(a) before straying into the controversial realm of legislative intent and policy consideration. Nor do they conclude that the disposition required by application of the text of section 502(a) is absurd. Notwithstanding these undisputed facts, the decisions each violate the first canon of statutory construction by failing to enforce the provision according to its unambiguous terms. This error is compounded by the courts' subsequent consideration of extratextual sources such as pre-Code practice. Such a practice can only be appropriate where, unlike the present case, the provision in question is ambiguous and subject to interpretation. Lastly, the approach taken by these cases runs afoul of the prohibition against achieving better policy outcomes through court interpretation. Achieving a better policy outcome—if that is what the Trustee urges—is a task for Congress, not the courts. <u>Hartford Underwriters</u>, 530 U.S. at 13–14, 120 S.Ct. 1942.

Based upon the foregoing, this court finds the caselaw upon which the Trustee relies unpersuasive as it fails to show the proper respect for the words of Congress and engages in meaningful and improper departures from conventional doctrines of statutory interpretation.

Whiteley v. Slobodian (In re Mechanicsburg Fitness, Inc.), 592 B.R. 798 (Bankr. M.D. Pa. 2013).

The United States Supreme Court has instructed: "When the words of a statute are unambiguous, then, this first canon [of statutory construction] is also the last: judicial inquiry is complete." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992).

This Court agrees with the holding of Judge Van Eck and concludes that precluding standing to the Morris Creditors to object to other creditor claims runs afoul of the plain language of section 502(a) of the Bankruptcy Code. Thus, the Court holds that the Morris Creditors do have standing to object to the IRS claim.

## VII.

For all of the reasons set forth above, the Court concludes that the Morris Creditors have standing to object to the IRS claim. While the Morris Creditors have standing to prosecute an objection, the merits of it are not supported by the evidence. An order shall therefore be entered that allows the claim of the IRS at Claim Registry No. 13-1 and overrules the objection to claim filed by the Morris Creditors.

Dated: December 4, 2020

_____
The Honorable Jeffery A. Deller
United States Bankruptcy Judge

cc:   Daniel Peter Morris, Esquire
      Mrs. Lucille Aiosa Morris

Ward W. Benson, Esquire