FILED
12/14/20 4:03 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| DAVID H. ZIMMER, | ) | Case No. 17-20543-JAD |
| | ) | |
| Debtor. | ) | Chapter 7 |
| _____ X | ) | |
| | ) | Related to ECF No. 428 |
| DANIEL PETER MORRIS and | ) | |
| LUCILLE AIOSA MORRIS, | ) | |
| | ) | |
| Movants, | ) | |
| | ) | |
| - v - | ) | |
| | ) | |
| DAVID H. ZIMMER, | ) | |
| DEPARTMENT OF TREASURY | ) | |
| INTERNAL REVENUE SERVICE, | ) | |
| and ROSEMARY C. CRAWFORD, | ) | |
| Chapter 7 Trustee, | ) | |
| | ) | |
| Respondents. | ) | |
| _____ X | | |

## MEMORANDUM OPINION

The matter before the Court is a motion captioned as "Creditors Daniel Peter Morris and Lucille Aiosa Morris Motion to Dismiss This Bankruptcy for the Debtor's Abuse and Lack of Good Faith Subject to the Agreement at AP-17-02230-JAD Doc 124-2 Approved at AP-17-02230-JAD Doc 124" (the <u>Motion to Dismiss</u>").

The Motion to Dismiss is a core proceeding, pursuant to which the Court has the requisite subject-matter jurisdiction to enter a final judgment. <u>See</u> 28 U.S.C. §§ 157(b)(2)(A), 157(b)(2)(0) and 1334(b). This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Federal

Rule of Bankruptcy Procedure 7052.[1]  As set forth more fully in this Memorandum

Opinion, an order shall be entered that denies the Motion to Dismiss.

## I.

Daniel Peter Morris and Lucille Aiosa Morris (collectively, the "Morris

Creditors") were defrauded by their former lawyer, David H. Zimmer, giving rise

to certain non-dischargeable claims by the Morris Creditors against Mr. Zimmer.

Since the mid to late 2000's, the Morris Creditors have been engaged in

litigation and judgment enforcement proceedings against Mr. Zimmer.   That

litigation included cases brought in the state and federal courts of New York, a

brief foray into the United States Bankruptcy Court for the Southern District of

Florida, and judgment enforcement in the Court of Common Pleas of Allegheny

County, Pennsylvania.   Ultimately the parties' dispute found its way to this

Court's docket when Mr. Zimmer filed a chapter 13 case in the Western District

---

[1]  No party requested an evidentiary hearing on this matter.  Because the core facts are not subject to genuine dispute, the Court is authorized to determine this contested matter based on the following: the historical record made in this bankruptcy case, the historical record made in the related adversary proceedings, the admissions made by both the Morris Creditors and other parties in these proceedings, and the arguments of the parties (thereby putting the undisputed record into the appropriate perspective for the Court to render a decision). See e.g., Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 416 n. 3 (3d Cir.1988)(the historical record was sufficiently well developed to allow the bankruptcy court to draw the conclusions and inferences necessary to decide the contested matter); Nantucket Investors II v. California Fed. Bank (In re Indian Palms Assoc. Ltd.), 61 F.3d 197, 205 (3d Cir. 1994)(in a contested matter the bankruptcy court may take judicial notice of documents in the court's file confirming facts not in genuine dispute; or may take judicial notice to confirm that a specific document was filed, that a party took a certain position, that certain judicial findings were made or that a party made certain admissions); see also Wilmington Trust Co. v. AMB Corp. (In re AMB Corp.), 490 B.R. 370, 479 (Bankr. S.D.N.Y. 2013)(no evidentiary hearing required for contested matter when parties do not request evidentiary hearing and core facts are not disputed), and Cabral v. Shamban (In re Cabral), 285 B.R. 563, 576 (B.A.P. 1st Cir. 2002)(formal evidentiary not required when the court decides a motion to convert or dismiss a bankruptcy case)(collecting cases).

of Pennsylvania on February 14, 2017.

While this bankruptcy case is not necessarily complex, it is hardly routine. For example, while he proclaimed to be residing in the Western District of Pennsylvania as of the petition date, Mr. Zimmer's actual residence could generously be described as nomadic.  That is, he resided in Canada, Mexico and the United States from time to time in year 2016, and later was living in Canada when the instant bankruptcy case was commenced on February 14, 2017. See Transcript of September 9, 2020, ECF No. 418, at pp. 31-69; see also Debtor's Response to Motion to Dismiss the Bankruptcy Case for Abuse, Alternatively for Change of Venue, and Other Miscellaneous Relief, ECF 59, at paras. 40-45 and 111

Despite living in Canada as of the petition date, Mr. Zimmer falsely claimed in his bankruptcy schedules that he was a resident of Wall, Pennsylvania.  This misrepresentation led to a flurry of motions or requests by the Morris Creditors seeking dismissal of this bankruptcy case as a bad faith filing.  In fact, as of the writing of this Memorandum Opinion, the Morris Creditors have made at least 22 requests that the instant bankruptcy case be dismissed. See Creditors Daniel Peter Morris and Lucille Aiosa Morris Post-Evidentiary Hearing Brief, ECF 427, at para. 87.

However, because Mr. Zimmer's principal assets were located within the Western District of Pennsylvania, Mr. Zimmer's presence in Canada did not

preclude his commencement of a bankruptcy case in this district. See 11 U.S.C.

§ 109(a)("a person . . . that . . . has ... property in the United States . . . may be a

debtor under this title"); 28 U.S.C. § 1408(1) ("a case under title 11 may be

commenced in the district court for the district . . . in which the . . . principal

assets in the United States, of the person . . . that is the subject of such case have

been located for the one hundred and eighty days immediately preceding such

commencement").

Accordingly, the Court declined the Morris Creditors' invitation to dismiss

this case based upon lack of bankruptcy eligibility and/or for improper venue.

As this case meandered through the bankruptcy system, both the Morris

Creditors and the standing Chapter 13 Trustee had a number of concerns

regarding whether Mr. Zimmer filed this bankruptcy in good faith.  For example,

by way of a motion to dismiss filed on October 13, 2017, the Morris Creditors

complained that Mr. Zimmer's shell game regarding his multiple addresses was

a scheme designed to frustrate the judgement enforcement efforts of the Morris

Creditors.  A review of the findings and conclusions of the various state and/or

federal courts regarding Mr. Zimmer's conduct largely supports the Morris

Creditors' narrative. See generally Motion of Creditors & Adversary Plaintiffs

Daniel Peter Morris & Lucille Aiosa Morris to Dismiss Bankruptcy Case for Abuse,

Alternatively to Change Venue & Other Miscellaneous Relief and exhibits attached

thereto, ECF 55.

The initial motion to dismiss filed by the Morris Creditors, and the many requests that followed, also repeated a litany of other bad acts of Mr. Zimmer. These bad acts can generally be described as Mr. Zimmer's failure to produce documents or information in collateral litigation, Mr. Zimmer's failure to list assets in his prior bankruptcy (which was filed in the Southern District of Florida in 2005), and Mr. Zimmer's failure to list the Morris Creditors as a creditor in Mr. Zimmer's 2005 Florida bankruptcy (thereby precluding or preventing the Morris Creditors from receiving a distribution at the conclusion of that case).

The Morris Creditors also complained that, in the bankruptcy case before this Court, Mr. Zimmer failed to adequately disclose interests that Mr. Zimmer had in various business ventures or explain whether he had any meaningful earnings from the same.  With respect to lack of disclosure, the Morris Creditors also complained to the Chapter 13 Trustee that Mr. Zimmer had not adequately disclosed information regarding Mr. Zimmer's pre-bankruptcy disposition of certain retirement assets and the whereabouts of the proceeds of a sale of a Florida residence which occurred in 2007. See e.g., Supplemental Reply of Creditors Daniel Peter Morris and Lucille Aiosa Morris to the Order Directing the Debtor to Show Cause Why He Should Not Be Denied a Discharge at Doc 198, ECF 204, at para. 3 and the exhibits attached thereto.

With respect to Mr. Zimmer's current assets which were disclosed, the most valuable of them consists of Mr. Zimmer's interest in his late parents' decedent's

estate.  By way of background, prior to the filing of the chapter 13 bankruptcy and

in an effort to initiate judgment execution on Mr. Zimmer's inheritance consisting

of property located in Allegheny County, Pennsylvania, the Morris Creditors

domesticated their New York judgments to Allegheny County, Pennsylvania.

When Mr. Zimmer attempted to evade the Morris Creditors' judgment

collection efforts by disclaiming his interests in the decedent's estate, the Court

of Common Pleas of Allegheny County prevented or otherwise enjoined the

disclaimer by Mr. Zimmer.  It was at that juncture that Mr. Zimmer commenced

his chapter 13 bankruptcy before this Court, and in connection with this

bankruptcy case Mr. Zimmer sought to avoid the putative judgment lien (or

execution lien) of the Morris Creditors as an avoidable preference pursuant to 11

U.S.C. § 547. <u>See</u> Complaint to Avoid Preferential Liens Pursuant to 11 U.S.C. §

547, ECF 64.

In their motion(s) to dismiss, the Morris Creditors complain that the timing

of the bankruptcy, which occurred on the heals of the Morris Creditors' judgment

collection efforts and Mr. Zimmer's failed disclaimer of his inheritance, is *indicia*

that the bankruptcy case was commenced in bad faith. <u>See generally</u> Motion of

Creditors & Adversary Plaintiffs Daniel Peter Morris & Lucille Aiosa Morris to

Dismiss Bankruptcy Case for Abuse, Alternatively to Change Venue & Other

Miscellaneous Relief and exhibits attached thereto, ECF 55.

The Morris Creditors' concern regarding Mr. Zimmer's lack of good faith was

shared by the Chapter 13 Trustee and another creditor, the Client Protection Fund

of the Bar of Maryland.  The Client Protection Fund of the Bar of Maryland is an

entity that reimbursed the Morris Creditors on account of some of their claims

against Mr. Zimmer.  As a result the Client Protection Fund of the Bar of Maryland

asserted certain subrogated claims in this bankruptcy case.  It is worth noting

that the Client Protection Fund of the Bar of Maryland and Morris Creditors are

not the only creditors identified by Mr. Zimmer in his bankruptcy schedules.

Rather, the schedules identified eight additional creditors,[2] including an

unsecured priority claim of the Internal Revenue Service that was timely filed by

the IRS at Claims Register No. 13-1.

In response to the initial motion to dismiss filed by the Morris Creditors, the

Client Protection Fund of the Bar of Maryland opposed dismissal and averred:

> . . . To the best of its information, Debtor has assets in
> this district that can be devoted to payment of Debtor's
> creditors provided the Debtor exercises Debtor's right to
> set aside transfers.
>
> . . . The Client Protection Fund of the Bar of Maryland
> believes that the case should not be dismissed because
> there is a better prospect of all creditors being fairly
> treated in this case than if the case were to be dismissed.

See Response of the Client Protection Fund of the Bar of Maryland to Motion to

---

[2]  While the schedules filed by Mr. Zimmer reflect 8 creditors, a total of 14 proofs of claims were filed according to the claims register.  Some creditors filed multiple claims (e.g., the Morris Creditors and Portfolio Recovery Associates, LLC).  The difference between the number of scheduled creditors versus the number of claims filed in this bankruptcy case is not material to the adjudication of the Motion to Dismiss because it is undisputed that presently there remains 3 creditors– the Morris Creditors, the Client Protection Fund of the Bar of Maryland, and the IRS.

Dismiss the Bankruptcy Case for Abuse, Alternatively to Change Venue and Other

Miscellaneous Relief, ECF 58, at paras. 5 and 6.

With respect to the Chapter 13 Trustee, she shared much of the Morris

Creditors' concerns regarding Mr. Zimmer's lack of good faith.  For example, the

Chapter 13 Trustee had concerns regarding chapter 13 plan funding and that

despite Mr. Zimmer's asserted self-employment income, Mr. Zimmer failed to

provide monthly financial reports to the Chapter 13 Trustee which was necessary

to demonstrate the amount and/or *bona fides* of such income.  The Chapter 13

Trustee further voiced objections regarding unscheduled or undisclosed assets

that were not adequately answered or explained by Mr. Zimmer and which could

conceivably have value for payment to creditors.  Lastly, she had objections

regarding the disposition of the probate estate, which value for all creditors could

be lost outside of a bankruptcy setting.  It was against this backdrop that the

Chapter 13 Trustee opposed dismissal of the bankruptcy case and requested that

the Court instead convert the case to a chapter 7 liquidation for the benefit of all

creditors. See Motion to Convert Case from Chapter 13 to Chapter 7, ECF 76; see

also 11 U.S.C. §1307(c)(providing that the Court may convert or dismiss a case,

"whichever is in the best interests of creditors and the estate, for cause"); accord

Jacobsen v. Moser (In re Jacobsen), 609 F.3d 647, 660 (5th Cir.2010) ("we hold that

a bankruptcy court has the discretion to grant a pending motion to convert for

cause under § 1307(c) where the debtor has acted in bad faith or abused the

bankruptcy process"); <u>In re Jensen</u>, 425 B.R. 105, 111 (Bankr. S.D.N.Y. 2010)
(citing Keith M. Lundin, Chapter 13 Bankruptcy, 3d Ed. § 312.1 (2000 &
Supp.2004) ("If there are assets to be administered, conversion will usually be the
better bet for the general creditor")); <u>Blaise v. Wolinsky (In re Blaise)</u>, 219 B.R. 946
(B.A.P. 2d Cir. 1998) (finding conversion rather than dismissal appropriate where
the debtor "persisted in delaying the sale of property, the proceeds of which were
to be used to pay creditors"); and <u>In re Brock</u>, 365 B.R. 201, 212-13 (Bankr. D.
Kan. 2007).

Ultimately a hearing was scheduled for February 20, 2018 with respect to
both the Morris Creditors' motion to dismiss and the Chapter 13 Trustee's motion
to convert.  When the hearing began, counsel for Mr. Zimmer advised the court
that each of Mr. Zimmer, the Morris Creditors and the Client Protection Fund of
the Bar of Maryland had reached a "global" settlement which provided for a
structured dismissal of the case and distribution of assets and/or payments by
and among these three parties only.  It was also stated that a written motion
memorializing the settlement terms was to be presented for Court approval
pursuant to Federal Rule of Bankruptcy Procedure 9019.

Upon being advised of the "global settlement" at the hearing, the Chapter
13 Trustee objected and argued that the alleged settlement was not in the best
interest of creditors because other creditors who are not parties to the "global
settlement" were precluded from sharing in the recovery of the inheritance assets

due Mr. Zimmer.

At the hearing, the Court also inquired of counsel as to whether the settlement was in the best interests of the creditor body as a whole.  Towards that end, the Court questioned counsel as to whether a structured dismissal of a chapter 13 case that fails to protect the interests of other creditors in a manner consistent with the Bankruptcy Code's priority scheme was proper pursuant to the United States Supreme Court's decision in Czyzewski v. Jevic Holding Corp., 137 S.Ct. 973 (2017).

Inasmuch as these questions remained unresolved, the Court continued the hearing on the dueling motions to dismiss and to convert to May 2, 2018, pending the filing and adjudication of an application to approve settlement by and between Mr. Zimmer, the Morris Creditors, and the Client Protection Fund of the Bar of Maryland.

Not long after the February 20, 2018 hearing, on February 27, 2018, counsel for Mr. Zimmer filed a Motion for Approval of Settlement Pursuant to Bankruptcy Rule 9019.  See ECF 119.  In response to the settlement motion, the Morris Creditors inexplicably had buyer's remorse, did an about face, filed a response in opposition, and proclaimed that the Court should reject the settlement because the Morris Creditors' acceptance of the settlement proposal was "improvident" and that Mr. Morris was either "not well" or was "ill" when he agreed to a deal.  See Response of Daniel Peter Morris and Lucille Aiosa Morris to

Debtor's Motion to Approve Settlement, ECF 128.  The Morris Creditors also renewed their request that this bankruptcy case be dismissed. Id.  Naturally, counsel for Mr. Zimmer and counsel for the Client Protection Fund of the Bar of Maryland were outraged.  The Client Protection Fund of the Bar of Maryland even filed a motion seeking sanctions against the Morris Creditors. See Motion for Sanctions, ECF 131.

On May 2, 2018, the Court conducted a hearing on the dueling motions to dismiss or convert, as well as the settlement motion and the Morris Creditors' objection thereto.  At the hearing, the Court independently considered the "global settlement" in light of the whole record of this case and declined to approve it. See Order Denying Motion to Approve Settlement, ECF 139  The Court also elected to convert the case to a chapter 7 liquidation as opposed to dismissing the case. See Order (A) Denying Confirmation of Amended Chapter 13 Plan, (B) Denying Motion to Dismiss, and (c) Converting Case to Chapter 7, ECF 137.   The reasoning of the Court was expressed on the record at the May 2, 2018 hearing, which is set forth below:

> I'm not approving the settlement. I think significant questions exist as to whether it's in the best interest of creditors, as articulated by Mr. Katz at the last hearing that we had on it. I know the Chapter 13 Trustee hasn't filed a response to it here. But the court is exercising its independent duty to review it.
>
> I think . . . questions abound in terms of really whether these proceeds should be preserved for the benefit of unsecured creditors, and not merely for the

benefit of Mr. Morris, or the Client Protection Fund. I do recognize that whether or not the asset is preserved for the benefit of other-- of all the creditors turns upon the outcome of the preference action. But we'll convert it. We'll give the Chapter 7 Trustee an opportunity to be heard in terms of whether the Chapter 7 Trustee intends to intervene and pursue that preference action.

If the Chapter 7 Trustee determines that the preference action isn't viable, then the Chapter 7 Trustee, as the fiduciary, can so advise the court. But I'm not going to approve the settlement in its present form. I will schedule a status conference and everyone can appear and advise the court as to whether any further discovery needs to be taken. And the parties can advise the court as the extent to which the court should consider the position of the Chapter 7 Trustee with respect to the request to dismiss this underlying bankruptcy case. Surely creditors have an opportunity to be heard. . . .

. . . In fact, I'm -- you know what, let's simplify this matter, because, you know, in determining whether or not to convert or dismiss 1307(c) clearly says what is in the best interest of creditors, or the estate. And what we have here is a pot of money that's sitting in the Court of Common Pleas, in the Orphans Court division, and the issue is, who gets it? And there are issues in terms of exactly when Mr. Morris, you obtained your lien position, and whether or not that should be set aside. And of course, there's a dispute as to whether or not your lien is actually owned by the Client Protection Fund. We have no resolution of that either presently.

But if that lien is avoidable, and I have no opinion on that presently, either positively or negatively, if that lien is avoidable, those funds go to all of the creditors to be distributed pro rata. And so preserving that asset for the benefit of creditors generally is in the best interest of creditors in the estate, not one particular creditor.

And so in that regard, it is in the best interest to

-12-

convert, not to dismiss. Now, I recognize that you have made allegations that this bankruptcy case has not been commenced in good faith. In fact, some of your items which you've pointed out causes the court a lot of concern, including Mr. Zimmer's allegation that he lived in Wall, Pennsylvania, when it appears he's never lived in Wall, Pennsylvania. I'm accepting that as true, Mr. Morris. I'm accepting that all as true. Including the contentions that maybe in a prior bankruptcy case, Mr. Zimmer played fast and loose with his schedules, and that you didn't get notice. I'm accepting for argument purposes that what you say is true, is true.

I'm accepting for purposes of argument that what you say occurred in the New York courts that Mr. Zimmer played fast and loose to avoid service, and to -- did nothing but stall and delay you, I'm accepting all of that as being true as well. And so there is indicia here that Mr. Zimmer plays some games with the system, and I'm not very happy about that. And there may very well be consequences with that.

But the issue that the court is left with is should the case be converted or should it be dismissed in light of that contour of events?  I think the interest of the entire creditor body are better served by converting this case to the chapter 7 and preserving assets for all creditors if they can be preserved.

That is what's in the best interest of all creditors. Now, I recognize that you've made this contention that you know what, Mr. Zimmer himself can't even be a debtor under section 109 of the bankruptcy code because he doesn't live here in western Pennsylvania. But if you look at the statute, his principal asset is here, and that is that pot of money.

If you look at the schedules, that's really the largest asset. And so from a plain language, statutory basis, it appears that this case can be here. And so it seems appropriate under all of those circumstances, and again I'm taking all of your allegations, Mr. Morris, as

-13-

being true. It seems appropriate to deny the motion to dismiss, to convert the case to a chapter 7. And as a part of my discretion in doing that, I also recognize that some of those facts may be germane to your non-dischargeability action. You have your ability to continue your non-dischargeability action. In fact, you filed it purposely in this district with advice of legal counsel.

And by the way, it is admitted that you, yourself, are an attorney. So it has been knowingly filed in this district.  And you'll have your remedy, whatever that may be, and it is something that the court will decide if and when the appropriate time arises.

And so for all of these reasons, and in considering the entire record here, I'm going to deny the motion to approve settlement, not on the basis that there was a lack of capacity. I'm denying it on the basis that I think significant questions abound as to whether it's in the best interest of creditors for the reasons stated by Mr. Katz at the past hearing. And I'm going to convert this case to a chapter 7, and we'll schedule a status conference on your adversary . . .

If you think that there's a basis for you to have your adversary proceeding transferred to another venue, when you've chosen to be here in this court, then file your motion and we'll hear it, and we'll see what we see. And I'll schedule a status conference with the trustee. And we'll have the trustee advise this court as to what the trustee -- how much time the trustee needs to review the preference action commenced by -- against you, Mr. Morris, and whether the Chapter 7 Trustee intends to pursue that. That's what we're going to do.

See Transcript of May 2, 2018 Hearing ("Transcript"), ECF 433, at pages 14-20.

After the bankruptcy case was converted to a chapter 7 liquidation,

Rosemary Crawford, Esquire was appointed as Chapter 7 Trustee.  In that regard,

she intervened in the preference litigation against the Morris Creditors at

-14-

Adversary Proceeding No. 17-02230-JAD, which was previously filed by Mr.

Zimmer seeking to avoid any lien (including any judgment lien or execution lien)

that the Morris Creditors may have against Mr. Zimmer's inheritance assets.  The

Morris Creditors continued in their defense against the preference action; they

also continued in their prosecution of a non-dischargeability action previously

filed by them against Mr. Zimmer at Adversary Proceeding No. 17-02195-JAD.

The Morris Creditors filed a further adversary proceeding against the Chapter 7

Trustee and Mr. Zimmer at Adversary Proceeding No. 18-02109-JAD, which was

stayed because the lawsuit was redundant to all or some of the claims set forth

in the non-dischargeablilty action filed at No. 17-02195-JAD.

The Client Protection Fund of the Bar of Maryland also filed a declaratory

judgment action against both the Morris Creditors and the Chapter 7 Trustee at

Adversary Proceeding No. 18-02094-JAD, seeking a determination of the relative

priority rights of the subrogation claim of the Client Protection Fund vis-a-vis the

remaining claims of the Morris Creditors.  The Client Protection Fund of the Bar

of Maryland also sought a determination that the Morris Creditors' actions in

pursuing various legal remedies violated certain "cooperation" provisions of the

contractual agreements by and between the Client Protection Fund  and the

Morris Creditors.

The Office of the United States Trustee then got into the action and  filed an

adversary proceeding against Mr. Zimmer at Adversary Proceeding No. 19-02210-

JAD. By this adversary proceeding, the United States Trustee sought a determination that Mr. Zimmer is ineligible for a discharge with respect to all of Mr. Zimmer's debts.

Mr. Zimmer ultimately chose to not contest the Morris Creditors' non-dischargeability action. Mr. Zimmer's debts due the Morris Creditors were therefore found to be non-dischargeable. <u>See</u> Order, Adversary Proceeding No.17-02195-JAD, ECF 165.

Mr. Zimmer also chose to not defend the objection to discharge filed by the United States Trustee, and a default order was entered declaring Mr. Zimmer ineligible for a discharge as to all of his creditors pursuant to 11 U.S.C. §§ 727(a)(2)(A), (a)(3), and (a)(4)(A). <u>See</u> Order of Court, Adversary Proceeding No.19-02210-JAD, ECF 21.

More squabbles ensued, and the docket entries in the bankruptcy case and related adversary proceedings continued to grow as the Morris Creditors proceeded to file pleading after pleading. To promote an efficient and timely resolution of the pending disputes, and to avoid further lengthy litigation reminiscent of the infamous case of <u>Jarndyce v. Jarndyce</u> as described in the Charles Dickens' novel *Bleak House*, the Court referred the open adversary proceedings between the Morris Creditors, the Chapter 7 Trustee, and the Client Protection Fund of the Bar of Maryland to mediation before United States Bankruptcy Judge Gregory L. Taddonio. <u>See</u> Order Directing Mediation, ECF 334.

The mediation conducted by Judge Taddonio proved to be successful, and the Chapter 7 Trustee, the Morris Creditors, and the Client Protection Fund of the Bar of Maryland amicably resolved their differences and memorialized the settlement in an agreement dated February 4, 2020.   That agreement was approved by the Court on March 10, 2020. <u>See</u> Order (A) Approving Settlement and (B) Directing Clerk to Close Adversary Proceedings, ECF 370.

The gist of the settlement is that funds (collectively, the "<u>Recoveries</u>") being held by the Court of Common Pleas of Allegheny County and certain other parties (estimated to collectively be in the amount of $80,000) are to be turned over to the Chapter 7 Trustee.  After payment of the administrative fees and reimbursement of expenses of the Chapter 7 Trustee (which she agreed to cap at $14,000) and payment of any allowed priority claim of the IRS, the remaining sums held by the Chapter 7 Trustee are to be split evenly between the Morris Creditors and the Client Protection Fund of the Bar of Maryland.

Other terms of the settlement agreement included discontinuing the open adversary proceedings referenced above (i.e., Adversary Proceeding Nos. 17-02230-JAD, 18-02094-JAD, and 18-02109-JAD) and mutual releases between the parties.  To the extent the Morris Creditors and the Client Protection Fund have any claims that remain unpaid after payment to the Chapter 7 Trustee, after payment to the IRS, and after the 50/50 split of the residual funds to the Morris Creditors and the Client Protection Fund, each party is free to pursue recovery of

-17-

their respective unpaid non-dischargeable claims against Mr. Zimmer.

It should be noted that except for the Morris Creditors and the Client Protection Fund, the IRS is the only other pre-petition creditor of Mr. Zimmer which is provided for in the settlement agreement. The reason for this is that the Morris Creditors lodged objections to all of the unsettled creditor claims filed against Mr. Zimmer, and all but one failed to respond. The lone creditor to oppose the Morris Creditors' objection to claim was the IRS. Ultimately, after going to trial, the objection of the Morris Creditors to the claim of the IRS was overruled on the merits and the IRS's unsecured priority claim in the amount of $12,064.18 was allowed by way of Memorandum Opinion and Order dated December 4, 2020. See ECF 448 and ECF 449.

Foreseeing the allowance of the IRS claim, the Morris Creditors preemptively filed the instant Motion to Dismiss on November 3, 2020, which was opposed by the Chapter 7 Trustee, the Client Protection Fund of the Bar of Maryland, the IRS, and Mr. Zimmer. At the December 1, 2020 hearing held on the Motion to Dismiss, Mr. Morris not only re-hashed the same grievances he asserted previously in this case, but he also admitted that the primary motive behind the Morris Creditors' most recent renewal of the dismissal request is that the Morris Creditors desire to receive payment ahead of (or to the detriment of) the IRS.

Specifically, the Morris Creditors' logic is that if this case is dismissed, the Morris Creditors believe they could disregard the distribution waterfall mandated

by section 726 of the United States Bankruptcy Code, 11 U.S.C. § 726. The Morris Creditors also believe that dismissal of the bankruptcy case would render the statutory priority distribution to the IRS nugatory (despite the fact that the anticipated distribution to the IRS was acknowledged by, agreed to, and contemplated in, the settlement agreement).

At the conclusion of the December 1, 2020 hearing, the Court took the Motion to Dismiss under advisement. Upon due consideration of the motion, and arguments of the parties, the Court finds the Morris Creditors' arguments to be unconvincing.

## II.

There is no absolute right of a party-in-interest to obtain dismissal of a chapter 7 bankruptcy case. See e.g. In re Pinnick, 598 B.R. 206, 209 (Bankr. W.D. Pa. 2019)(citing In re Fleurantin, 420 F. App'x 194, 197 (3d Cir. 2011); Schwartz v. Smith (In re Smith), 507 F.3d 64, 72 (2d Cir. 2007); Sicherman v. Cohara (In re Cohara), 324 B.R. 24, 27 (B.A.P. 6th Cir. 2005); Bartee v. Ainsworth (In re Bartee), 317 B.R. 362, 366 (B.A.P. 9th Cir. 2004); and Turpen v. Eide (In re Turpen), 244 B.R. 431, 434 (B.A.P. 8th Cir. 2000)).

This conclusion is supported by the permissive language used in section 707(a) of the Bankruptcy Code that provides that the Court "may" dismiss a chapter 7 bankruptcy case "for cause." See 11 U.S.C. § 707(a); cf. Marrama v. Citizens Bank of Massachusetts, 237 S.Ct. 1105 (2007)(majority opinion by

Stevens, J.)(notwithstanding the fact that 11 U.S.C. § 706(a) provides that a chapter 7 debtor "may convert a case under this chapter to a case under chapter 11, 12, or 13," the court has discretion pursuant to 11 U.S.C. § 105(a) to deny such a request when conversion is prejudicial to creditors); cf. Marrama, 127 S.Ct. at 1113 (dissent by Thomas, J.)(observing that provisions of 11 U.S.C. § 706(b) stating that the "court may convert" is permissive in nature and affords bankruptcy courts with discretion).

That the question of whether or not to dismiss a chapter 7 bankruptcy case is left to the sound discretion of the Court is additionally supported by the permissive language utilized in section 707(b) of the Bankruptcy Code, which provides that the Court "may" dismiss a chapter 7 bankruptcy case if the Court finds that the debtor filed the petition "in bad faith" or that the "totality of the circumstances of the debtor's financial situation demonstrates abuse." See 11 U.S.C. § 707(b)(2)(B)(3).[3]

In exercising its discretion, the Court balances the equities. See Peterson v. Atlas Supply Corp. (In re Atlas Supply Corp.), 857 F.2d 1061, 1063 (5th Cir. 1988); cf. In re Kaiser Aluminum Corp., 456 F.3d 328, 340 (3d Cir. 2006)("the

---

[3]  11 U.S.C. § 707(a) applies to those cases which are commenced under one chapter of the Bankruptcy Code and are later converted to chapter 7.  The applicability of 11 U.S.C. § 707(b) to converted cases is far from certain.  Compare In re Fox, 370 B.R. 639 (Bankr. D.N.J. 2007)(holding that section 707(b) does not apply to cases converted from one chapter to chapter 7) with In re Amaro, Bankruptcy No. 20-80051, 2020 WL 6937704 (Bankr. N.D. Ill. September 30, 2020)(section 707(b) applies to converted cases).  The Court has assumed for sake of argument that 11 U.S.C. § 707(b) applies, but need not decide this issue because the best interest of creditors analysis is subsumed in any analysis of bad faith or totality of circumstances warranting dismissal under section 707(b).

bankruptcy courts have broad authority to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy estates").

With respect to the balancing of interests, courts have held that if "dismissal would prejudice the creditors, then [the motion to dismiss] will ordinarily be denied." In re Atlas Supply Corp., 857 F.2d at 1063 (citing In re Williams, 15 B.R. 655 (E.D. Mo. 1981).  Courts have also held that "[d]elay in satisfying creditors' claims can be sufficient to preclude dismissal." Id.; see also In re Lots by Murphy, Inc., 430 B.R. 431, 435 (Bankr. S.D. Tex. 2010).

Stated succinctly, "the test turns on whether or not the dismissal is in the best interests of the debtor and the creditors of the estate, with particular emphasis on whether the dismissal would be prejudicial to creditors." In re Pinnick, 598 B.R. at 210 (quoting In re Aupperle 352 B.R. 43, 46 (Bankr. D.N.J. 2005)(citing In re McCullough, 229 B.R. 374, 376 (Bankr. E.D. Va. 1999) and In re Stephenson, 262 B.R. 871, 874 (Bankr. W.D. Okla. 2001)); see also In re Harker, 181 B.R. 326, 328 (Bankr. E.D. Tenn. 1995)(citing In re Mathis Insurance Agency, Inc., 50 B.R. 482 (Bankr. E.D. Ark. 1985) and In re Astin, 77 B.R. 537 (Bankr. W.D. Va. 1987)).

This requires an assessment of the reasons for requesting dismissal and the impact that a dismissal can have on creditors. Pinnick, 598 B.R. at 210; see also In re Jabarin, 395 B.R. 330, 339 (Bankr. E.D. Pa. 2008).

For example, in Pinnick, my colleague U.S. Bankruptcy Judge Gregory L.

Taddonio found that circumstances warranting the denial of a motion to dismiss are present when the motion to dismiss is prosecuted while a chapter 7 bankruptcy trustee is in the process of liquidating non-exempt assets for the benefit of creditors. In re Pinnick, 598 B.R. at 210; accord Gill v. Hall (In re Hall), 15 B.R. 913, 917 (B.A.P. 9th Cir.1981)(dismissal not appropriate where it would cause "plain legal prejudice" to creditors in the form of precluding non exempt assets from being liquidated for their benefit); In re Klein, 39 B.R. 530, 533 (E.D.N.Y. 1984)(plain legal prejudice present where creditor collection efforts are delayed and there is no assurances that debtor's assets would be distributed to creditor body once the bankruptcy court relinquishes jurisdiction).[4]

Judge Taddonio's conclusion is consistent with decisions of other courts which have held that dismissal of the bankruptcy case is the appropriate remedy when neither of the "twin pillars" of bankruptcy are present. In re Lots by Murphy, Inc., 430 B.R. at 435-36.  Those "twin pillars" that must be absent to support dismissal are: (1) a discharge for the honest but unfortunate debtor, and (2) when assets are available for the satisfaction of valid claims against the estate. Id.  As to the latter, the court in Lots by Murphy stated:

---

[4]  See also In re Ross, 21 B.R. 5 (Bankr. E.D.N.Y. 1982), where the court held:

> The discovery of assets is not cause to dismiss such a proceeding. In re Williams, 15 B.R. 655 (E.D.Mo.1981); In re Blackmon, 3 B.R. 167 (Bkrtcy.S.D.Ohio 1980). If anything, it is grounds for retaining jurisdiction, i.e., that creditors who perhaps expected to recover nothing on their claims may be assured of an equitable and full distribution of the debtor's newly discovered assets.

> [T]he second pillar [is present] even if the [debtor's] assets are such that claims can only be paid a very small percentage on the dollar. The key is that at least some portion of claims, however small, be paid through liquidation of assets.

Id. at 436.

Even when the debtor engaged in misconduct, courts have also refused to dismiss a bankruptcy if dismissal will hinder creditor collection efforts. See Dionne v. Simmons (In re Simmons), 200 F.3d 738, 743 (11th Cir. 2000). This is because bankruptcy is not only a remedy for debtors, it is also a collective remedy for creditors. See e.g., In re Middleton, 544 B.R. 449, 456-57 n.2 (Bankr. S.D. Ala. 2016)(collecting cases, including Circuit and Supreme Court opinions, discussing the collective nature of bankruptcy from the creditor perspective).

That bankruptcy is a collective remedy for creditors is reflected by the law's requirement that a bankruptcy trustee is a fiduciary for creditors and, consistent with that duty, the trustee has an obligation to object to a motion to dismiss if dismissal of the case not in the best interest of creditors. Penick v. Tice (In re Scarborough), 732 F.2d 1211, 1214 (4th Cir. 1984); Gill v. Hall (In re Hall), 15 B.R. 913, 915 (B.A.P. 9th Cir. 1981). This duty is rooted in 11 U.S.C. § 704(1), which provides that the chapter 7 trustee has the responsibility to "collect and reduce to money the property of the estate" for the benefit of creditors.

### III.

With all of these standards in mind, the Court is persuaded that the Motion

to Dismiss should be denied.  The Court reaches this conclusion because the

purpose of the Motion to Dismiss is to deprive the IRS of its distribution from the

assets of the bankruptcy estate.  The Morris Creditors even admitted as much at

the December 1, 2020 hearing on the Motion to Dismiss.

In rendering this decision, the Court is mindful that the undisputed record

reflects that the IRS holds an allowed priority unsecured claim in the amount of

$12,064.18.  Not only does the IRS hold such a claim, the record reflects that the

Chapter 7 Trustee and the Client Protection Fund settled all of the litigation

involving the Morris Creditors, resulting in funds which will be made available for

distribution to the estate's three remaining creditors (i.e., the IRS, the Morris

Creditors, and the Client Protection Fund).

Specifically, the February 4, 2020 settlement agreement provides that funds

held by the Court of Common Pleas of Allegheny County and certain other parties

(estimated to be in the amount of $80,000) are be turned over to the Chapter 7

Trustee.  The settlement agreement further provides that after payment of the

administrative fees and expenses of the Chapter 7 Trustee (which she agreed to

collectively cap at $14,000), and after the Chapter 7 Trustee's payment of the

allowed priority claim of the IRS, the remaining sums held by the Chapter 7

Trustee are to be split evenly between the Morris Creditors and the Client

Protection Fund of the Bar of Maryland.

What is clear from the record is that the effort to dismiss this bankruptcy

case in order to attempt to preclude or impede the IRS from its lawful distribution operates as legal prejudice to the IRS.  Therefore granting the Motion to Dismiss is not in the best interests of creditors.

Apparently recognizing this outcome, the Morris Creditors suggest in passing that they never agreed to a distribution to the IRS as part of the February 4, 2020 settlement.  This suggestion is contrary to the undisputed record because the plain and unambiguous terms of the settlement agreement (which is attached hereto as <u>Appendix 1</u>) states that the parties "hereby agree to the distribution above."  The "distribution above" provision set forth in the agreement references a clear and unequivocal schedule of payments located at the top part of the first page of the document, and such schedule expressly includes the distribution on account of the unsecured priority claim of the IRS.

Accordingly, the IRS is in the position to have its priority claim paid in full unless its distribution is interfered with as part of a plan to dismiss this bankruptcy case.  In essence, the Morris Creditors' Motion to Dismiss is a collateral effort to re-write the settlement agreement and remove any distribution to the IRS.  Such a result sought by the Morris Creditors is not proper, at least when the disenfranchised creditor objects.  As one court held under a similar circumstances:

> In effect, the Debtor's proposed dismissal would result in a reordering of priorities, which is one of the factors that cases recognize as disfavoring a voluntary dismissal under § 707(a). See cases quoted in Part V.A. of this

> opinion (Barry v. Sommers (In re Cochener ), 382 B.R. at
> 337–39; Hopper, 404 B.R. at 308); see generally Pension
> Benefit Guaranty Corp. v. Belfance (In re CSC Indus.,
> Inc.), 232 F.3d 505, 508 (6th Cir.2000)(citing 11 U.S.C.
> § 1123(a)(4))("[A] fundamental objective of the
> Bankruptcy Code is to treat similarly situated creditors
> equally."); In re Warren, 181 B.R. 136, 139
> (Bankr.N.D.Ala.1995)(denying a joint motion by the
> debtor and the petitioning creditors to dismiss an
> involuntary bankruptcy, because the proposed
> settlement did not pay similarly situated creditors
> equally).

In re Dzierzawski, 528 B.R. 397, 417 (Bankr. E.D. Mich. 2015); see also Czyzewski

v. Jevic Holding Corp., 137 S.Ct. at 983 (structured dismissal of chapter 11 debtor

that provided for distribution of assets contrary to Bankruptcy Code priority

scheme was impermissible).

## IV.

In the course of issuing its decision today, the Court duly considered the

Morris Creditors' argument alleging that they can sidestep the distribution rights

of the IRS pursuant to various legal theories sounding in "common fund,"

"charging lien," or similar phenomena.   However, the record reflects that the

Morris Creditors waived these claims by operation of the settlement agreement

which provided for the Recoveries to be transferred the Chapter 7 Trustee's

account, consent to the Chapter 7 Trustee's payment of the priority unsecured

claim of the IRS from the Recoveries, and a resolution and discontinuation of the

litigation in which the Morris Creditors asserted such common fund or charging

lien claims before this Court. See Agreement Dated February 4, 2020 at p.1

(setting forth agreed distribution schedule, including payment to the IRS), para. 4 (providing for mutual releases), para. 8 (providing for the settlement and discontinuation of Adversary Proceeding No. 17-2230-JAD and authorizing the Chapter 7 Trustee to recover the funds at issue), and para. 9 (providing for the settlement and discontinuation of Adversary Proceeding Nos. 18-02094-JAD and 18-02109-JAD); see also Memorandum Order dated November 19, 2018, ECF 187 (holding that outcome of the aforementioned litigation will either be a resolution of, or *res judicata* or collateral estoppel to, the Morris Creditors' claims sounding in "common fund" or "charging lien").

All of these aforementioned provisions of the settlement agreement were agreed to by the Morris Creditors, approved by the Court, and are binding upon the Morris Creditors. See Bezanson et al. v. Bayside Enterprises, Inc. et al. (In re Medomak Canning), 922 F.2d 895, 902-03 (1st Cir. 1990)(party to bankruptcy court approved settlement precluded from asserting claims); Adam et al. v. Itech Oil Co. (In re Gibralter Resources, Inc.), 210 F.3d 573, 576 (5th Cir. 2000)(same).

The Court's conclusion is supported by the colloquy at the March 10, 2020 hearing on the settlement, which included a discussion of the fact that distributions would be made to the IRS under the settlement agreement on account of the IRS's claim only if the IRS's claim was found to be an allowed claim. The Morris Creditors raised no objection to these terms at that time, thereby providing further corroboration that the settlement agreement

contemplated that the IRS's allowed priority claim would be satisfied from the Recoveries.

In furtherance of their Motion to Dismiss, the Morris Creditors discuss the fact that the IRS is not a party to the settlement agreement and never signed it. It is true that the IRS is not a signor to the settlement agreement. This fact is irrelevant to the binding nature of it. The fact remains that the Morris Creditors agreed that the Recoveries will be remitted to the Chapter 7 Trustee for distribution by the Chapter 7 Trustee to creditors in accordance with the terms of the settlement agreement. This agreement by the Morris Creditors was approved by the Court pursuant to Federal Rule of Bankruptcy Procedure 9019, and as a result, the Court's final approval of the same along with the doctrines of estoppel and waiver preclude the Morris Creditors from asserting otherwise.[5] Moreover, there simply was no need for the IRS to be a signor of the document, after all the Chapter 7 Trustee is an estate fiduciary for the benefit of all unsecured creditors (including the IRS). See In re Medomak Canning, 922 F.2d at 901-02; see also Webster v. Mgmt. Network Grp. (In re NETtel Corp.), 364 B.R. 433, 441 (Bankr. D.C. 2006)(holding that trustee's fiduciary obligations "run only to a debtor's unsecured creditors").

---

[5]  The Court notes parenthetically that the contemplated distribution "waterfall" is consistent with the distribution scheme set forth in 11 U.S.C. § 726.

## V.

In rendering this decision today, the Court has considered the Morris Creditors' argument that denying the Motion to Dismiss effectively rewards Mr. Zimmer for his wrongful conduct.  To be clear, the Court does not countenance Mr. Zimmer's failure to adhere to the duties imposed upon him by law.  With that being said, Mr. Zimmer has received the consequences of not being an honest but unfortunate debtor.  Because of his actions or omissions, Mr. Zimmer has been found to be ineligible to receive a discharge in bankruptcy, and therefore he has had the ultimate form of bankruptcy relief taken away from him.

Moreover, this case, like any other bankruptcy case in this district, is monitored by the United States Department of Justice through the Office of the United States Trustee (the "U.S. Trustee").  As the "watchdog" of the bankruptcy system, and in coordination with the United States Attorney and other law enforcement agencies, the U.S. Trustee monitors the conduct of private parties and identifies and helps investigate bankruptcy fraud and abuse. See Phoenician Mediterranean v. Swope (In re J&S Properties, Inc.), 545 B.R. 91, 102 (Bankr. W.D. Pa. 2015)(citing H.R.  Rep. No. 95-595 (1977), reprinted in 1978 U.S.C.C.A.N. 5963).  The Court has no doubt that the U.S. Trustee is aware of the Morris Creditors' allegations against Mr. Zimmer because the U.S. Trustee is the entity that filed the action resulting in Mr. Zimmer's discharge being denied.  To the extent the U.S. Trustee is of the opinion that further investigation or action is

warranted based upon any act or omissions of Mr. Zimmer, such a decision by the U.S. Trustee lies within its discretion.   Nothing contained herein should be construed as an opinion as to those matters, either positively or negatively.

## VI.

The facts and circumstances set forth above demonstrate that it is simply improper to disenfranchise the IRS from receiving its lawful distribution.  For this reason, and because the circumstances reflect that the Morris Creditors have consented to the settlement agreement and that Mr. Zimmer has had his discharge denied, the balance of the equities dictates that the Motion to Dismiss shall be denied.  Accordingly, an order shall be entered that denies the Motion to Dismiss with prejudice.

Date: December 14, 2020                    _____
                                           The Honorable Jeffery A. Deller
                                           United States Bankruptcy Judge

cc:   Daniel Peter Morris, Esquire, counsel to the Morris Creditors
      Rosemary C. Crawford, Esquire, Chapter 7 Trustee
      Thomas E. Reilly, Esquire, counsel to the Client Protection Fund
      Ward W. Benson, Esquire, counsel to the United States, IRS
      Donald Calaiaro, Esquire, counsel to Mr. David Zimmer
      Joseph Sisca, Esquire, Assistant United States Trustee